**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

**PERRY LUCERO** and **PAMELA LUCERO**,

            Plaintiffs,

            v.

**EQUIFAX INFORMATION SERVICES LLC, *et al.*,**

            Defendants.

Civil Action No. 24-5338 (ZNQ) (TJB)

**OPINION**

---

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendant Flagstar Bank NA ("Flagstar" or "Defendant") (the "Motion," ECF No. 31.)  Defendant filed a brief in support of its Motion.  ("Moving Br.," ECF No. 31-1.)  Plaintiffs Perry and Pamela Lucero ("Plaintiffs") submitted a brief in opposition ("Opp'n Br," ECF No. 37), to which Defendant's replied ("Reply Br.," ECF No. 38).  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1]  For the reasons set forth below, the Court will **GRANT** the Motion.

**I.  BACKGROUND AND PROCEDURAL HISTORY[2]**

    Plaintiffs filed their Complaint on April 19, 2024 against Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); TransUnion LLC

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.
[2] For the purpose of considering this Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

("TransUnion"); AmeriHome Mortgage Company, LLC ("AmeriHome"); Cenlar FSB ("Cenlar"); and Flagstar Bank NA.[3]  (Compl., ECF No. 1.)  Plaintiffs allege that Defendants violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, by failing to accurately update Plaintiffs' credit reports.  (Compl. ¶ 1.)

In June 2017, Plaintiffs secured a mortgage for their property located in Albuquerque, New Mexico.  (*Id.* ¶ 13.)  Sometime thereafter, AmeriHome acquired Plaintiffs' mortgage loan.  (*Id.* ¶ 14.)  On January 10, 2020, Plaintiffs jointly filed for Chapter 13 bankruptcy, and a bankruptcy plan was confirmed on April 10, 2020.  (*Id.* ¶¶ 15–16.)  Thereafter, the following transactions regarding the AmeriHome mortgage took place: in January 2021, the AmeriHome mortgage account was acquired by Cenlar; in June 2021, the Cenlar mortgage account was acquired by Flagstar; in August 2022, the Flagstar mortgage account was acquired by non-party Nationstar Mortgage LLC; and in January 2023, the Nationstar mortgage account was acquired by MidFirst Bank.  (*Id.* ¶¶ 17–20.)

On June 23, 2023, Plaintiffs were discharged from their Chapter 13 bankruptcy and "excepted from discharge Plaintiffs' MidFirst mortgage—the same mortgage once serviced by AmeriHome, Cenlar, Flagstar, and Nationstar during the bankruptcy."  (*Id.* ¶ 21.)  Plaintiffs allege that at all relevant times, even throughout the bankruptcy, they made timely mortgage payments.  (*Id.* ¶¶ 24–25.)

In October 2023, Plaintiffs obtained their three-bureau credit report and noticed that the Equifax, Experian, and TransUnion credit reports contained inaccurate information because

---

[3] Experian, Equifax, and TransUnion have been dismissed from the case.  (*See* ECF Nos. 36, 43, 44.)  Additionally, AmeriHome and Cenlar filed an Answer on July 8, 2024.  (*See* ECF No. 22.)  Accordingly, only Flagstar has moved to dismiss.  Flagstar is a Michigan Corporation that furnishes consumer credit information to consumer reporting agencies.  (Compl. ¶ 8.)

(1) they indicated that Plaintiffs had an account rating of "derogatory," when they did not, (2) they stated Plaintiffs were in a "wage-earner plan" for their payment status, yet they were not, and (3) they furnished bankruptcy remarks even after the bankruptcy ended. (*Id.* ¶¶ 27–28; Opp'n Br. at 9.) According to Plaintiffs, the reporting was incorrect because it failed to take into account that the secured debt was no longer part of the bankruptcy and that Plaintiffs complied with the bankruptcy plan. (Compl. ¶ 28.) Moreover, the Complaint alleges that the credit reporting agencies ("CRA") failed to follow industry guidelines, which "require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy."[4] (*Id.* ¶ 29.)

After noticing the issues, Plaintiffs contacted the CRAs and requested that they conduct a reasonable investigation to remedy the inaccuracies of Plaintiffs' credit reports. (*Id.* ¶ 32.) However, on February 6, 2024, Plaintiffs received an updated copy of their three-bureau credit report and noticed that the "AmeriHome, Cenlar, and Flagstar tradelines continued to report the same inaccuracies." (*Id.* ¶¶ 35–37.) Thus, Plaintiffs allege that the CRAs responses were not the result of a reasonable investigation, in violation of the FCRA. (*Id.* ¶ 38.) Moreover, Plaintiffs claim that Equifax did not make an attempt to verify the AmeriHome, Cenlar, and Flagstar mortgage accounts. (*Id.* ¶ 42.)

Plaintiffs allege nine counts in their Complaint. Only Count Nine is relevant to the present Motion given that it is the only count asserted against Flagstar. According to Count Nine, Flagstar violated Section 1681s-2(b) of the FCRA by "failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or

---

[4] The Court takes judicial notice of the fact that the industry guidelines Plaintiffs refer to are the Consumer Data Industry Association's Metro 2. The Metro 2 is a guide created to "assist data furnishers" in the process of complying with the FCRA by correcting and updating consumer credit history information.

failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information." (*Id.* ¶ 118.) Flagstar also allegedly violated the FCRA by "continuing to report the Flagstar representation within Plaintiffs' credit files . . . without also including a notation that this debt was disputed, failing to fully and properly investigate" Plaintiffs' disputes. (*Id.* ¶ 119.)

## II.    <u>SUBJECT MATTER JURISDICTION</u>

The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because Plaintiffs assert claims under the FCRA.[5]

## III.    <u>LEGAL STANDARD</u>

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550

---

[5] The Complaint states that "Plaintiffs also assert actions under state[] law[]" (Compl. ¶ 10) but does not actually assert discrete counts under state law. It is unclear to the Court what state laws Plaintiffs are referring to. However, to the extent those state laws arise out of a common nucleus of operative fact to Plaintiffs' federal claims, the Court would have supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367.

U.S. at 555).  Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).  A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).  Lastly, generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  But where a document is "integral to or explicitly relied upon in the complaint," it "may be considered without converting the motion to dismiss into one for summary judgment" under Rule 56.  *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

## IV.  <u>DISCUSSION</u>

Defendant argues that the Court should grant its Motion because Plaintiffs' claim is "based on the theory that Flagstar was required to update its credit reporting years after it stopped servicing their mortgage loan to report that their mortgage loan account . . . was no longer part of a Chapter 13 bankruptcy." (Moving Br. at 1.)  Defendant argues that a "reasonable reader of the credit reports at issue would understand the information regarding the Flagstar mortgage loan account to mean that it was subject to a Chapter 13 bankruptcy at the time the account was closed, not currently." (*Id.* at 5.)  Defendant relies on federal courts in other circuits who have similarly held that a furnisher does not violate the FCRA when it fails to update its account after that account is sold to another party.  (*Id.* (citing *Gibbs v. Lending Club Corp.*, Civ. No. 19-3330, 2021 WL 5033484, at

5

*4 (N.D. Ga. Sept. 14, 2021) and *Terhune v. Bank of Am., N.A.*, Civ. No. 18-1440, 2018 WL 6249982, at *2 (S.D. Ind. Nov. 28, 2018))).  In sum, because Flagstar's only obligation was to ensure that the information was accurately reported to the CRAs when Plaintiffs' accounts were open, which it did, Defendant argues that the Court should grant its Motion.

Plaintiffs however argue that they properly alleged that they informed the CRAs of their dispute of certain information in the credit reports, that the CRAs notified the furnisher, and that the furnisher failed to conduct a reasonable investigation.  (Opp'n Br. at 6.)  Plaintiffs argue that it is immaterial whether the information is accurate at the time of servicing because that does not show that the current reports are accurate.  (*Id.* at 8.)  Plaintiffs insist that if they can "prove that the defendant's reporting was misleading enough to cause harm, it is sufficient enough to withstand a motion to dismiss."  (*Id.* at 8–9.)  Lastly, Plaintiffs claim that "the way Flagstar is reporting their secured mortgage tradeline gives the impression that [] Plaintiffs are still in Chapter 13 Bankruptcy."  (*Id.* at 9.)[6]

The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner."  *Cortez v. TransUnion, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).  The FCRA places certain duties on those who furnish information—like Flagstar—to consumer reporting agencies.  *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011).  Under 15 U.S.C. § 1681s-2(a), for instance, the furnisher of information has a duty to provide accurate information.  Additionally, 15 U.S.C. § 1681s-2(b)

---

[6] In a reply brief, Defendant argues that there is no allegation that it furnished any information to a CRA after it closed Plaintiffs' account and transferred it to another servicer.  (Reply Br. at 1.)  Defendant also argues that Plaintiffs' references to caselaw where there was a FCRA violation because information was accurate yet misleading is a red herring since the information Defendant furnished was accurate and not misleading.  (*Id.* at 2.)  Lastly, Defendant argues that Plaintiffs read their report in isolation, contrary to Third Circuit law.  (*Id.* at 3.)

imposes a duty to conduct an investigation into the completeness and accuracy of the information furnished in certain circumstances. *See Cortez*, 617 F.3d at 714. Notably, a furnisher "shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). Thus, as a threshold matter, courts should inquire into whether the information a plaintiff disputes is inaccurate. *Bibbs v. TransUnion, LLC*, 43 F.4th 331, 344 (3d Cir. 2022).

A private citizen may bring an action seeking to recover damages caused by a furnisher of information only under 15 U.S.C. § 1681s-2(b). *SimmsParris*, 652 F.3d at 358. The duties that are placed on furnishers of information by this subsection are implicated only "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1); *Cortez*, 617 F.3d at 714 ("[A] consumer must first inform the credit agency that s/he disputes the information," after which "[t]he credit reporting agency must reinvestigate promptly based on that dispute"). Notice under Section 1681i(a)(2) must be given by a CRA, and cannot come directly from the consumer. *See SimmsParris*, 652 F.3d at 358; *Chiang v. Verizon New England Inc.,* 595 F.3d 26, 35 n.8 (1st Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1154 (9th Cir. 2009); *Young v. Equifax Credit Info. Servs., Inc.,* 294 F.3d 631, 639 (5th Cir. 2002).

Thus, to state a claim under Section 1681s-2(b) of the FCRA, a plaintiff must establish (1) that he or she notified a CRA of the dispute under Section 1681i, (2) that the CRA notified the party who furnished the information, and (3) that the party who furnished the information failed to reasonably investigate or rectify the disputed charge. *White v. Flagstar Bank, F.S.B.*, Civ. No. 24-0177, 2024 WL 5360095, at *3 (D.N.J. Nov. 7, 2024) (citing *Holland v. TransUnion, LLC*, 574

F. Supp. 3d 292, 302 (E.D. Pa. 2021)); *Figueroa v. Cap. One, N.A.*, Civ. No. 23-482, 2024 WL 209058, at *4 (D.N.J. Jan. 19, 2024).[7]

Here, Defendant does not dispute that Plaintiffs notified Experian, Equifax, and TransUnion, three CRAs, thus satisfying prong one—that a plaintiff notifies a CRA of the dispute under Section 1681i. (*See* Compl. ¶¶ 32, 33, 40.) Although the Complaint lacks the necessary specific information about when Flagstar received notice from the CRAs, it can be reasonably inferred from the Complaint that Flagstar was notified of Plaintiffs' complaints. (*See id.* ¶ 118.) Although it need not at this stage of the proceedings, the Court notes that Defendant also does not dispute that the CRAs notified Flagstar of the alleged inaccuracies. Instead, the crux of the parties' dispute on this motion is whether Flagstar failed to abide by its obligations under the FCRA because it neglected to correct alleged inaccurate information and conduct a reasonable investigation. For the following reasons, the Court finds that Plaintiffs fail to plausibly allege that their credit report contains inaccurate information, and thus, have failed to state a claim under Section 1681s-2(b).

**A.      Whether the Disputed Information Was Inaccurate or Misleading**

As briefly explained, once a furnisher is put on notice under Section 1681i(a)(2), the furnisher must: "(1) conduct an investigation with respect to the disputed information; (2) review all relevant information received from the CRA; (3) report the results of the investigation to the CRA; and (4) if the information is found to be inaccurate or incomplete, report the results to all CRAs to which it originally provided the erroneous information." *Esperance v. Diamond Resorts*,

---

[7] Plaintiffs submitted a letter to the Court arguing that the Court's decision in *White v. Flagstar Bank, F.S.B.*, Civ. No. 24-0177 2024 WL 5360095, at *3 (D.N.J. Nov. 7, 2024), should not be followed given that the present case involves more servicers and borrowers than in *White*. (ECF No. 40.) The Court disagrees and notes that *White* is highly persuasive given the similarities of the facts of each case. The Court also finds that the involvement of more servicers and borrowers demonstrates that the information in the reports was accurate and understood to a reasonable reader to be historical information.

Civ. No. 18-10237, 2022 WL 1718039, at *5 (D.N.J. May 27, 2022). A post-notice investigation must be reasonable. *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014). But before a court considers the reasonableness of a furnisher's investigation, "it must first determine that the disputed information was in fact inaccurate." *Bibbs*, 43 F.4th at 344. As Plaintiffs correctly point out in their opposition brief, information "may . . . be inaccurate if, through omission, it creates a materially misleading impression." *Id.* at 343.

Importantly, the reporting of historical information, including the status of an account as of the time it was closed or transferred, is not considered inaccurate or misleading. *White*, 2024 WL 5360095, at *4; *Samoura v. TransUnion LLC*, Civ. No. 20-5178, 2021 WL 915723, at *4 (E.D. Pa. Mar. 10, 2021) (noting that information is not inaccurate when the account is closed); *Egues v. NelNet Servicing LLC*, Civ. No. 21-802, 2021 WL 3486904, at *3 (D.N.J. Aug. 9, 2021) (explaining that when the credit report is read "as a whole, it is clear that the information [the defendant] provided is historical and regards [the plaintiff's] accounts as of May 2015 when they were closed/transferred to another servicer"); *Salvador v. FedLoan Servicing*, Civ. No. 20-20568, 2021 WL 5422292, at *4 (D.N.J. Oct. 28, 2021) ("the mere reporting of historical information on a closed account" is not "inaccurate or misleading").

Moreover, the Third Circuit in *Bibbs v. TransUnion, LLC*, noted that "a reasonable interpretation" of reports indicating a closed account is historical information and not inaccurate under Section 1681e(b). *Bibbs*, 43 F.4th at 344. Given the caselaw in this Circuit, the information listed on Plaintiffs' credit report indicating (1) that they had an account rating of "derogatory," (2) that they were in a "wage earner plan" for their payment status, and (3) that Plaintiffs were still in Chapter 13 Bankruptcy was accurate at the time of the reporting and is thus considered historical information and reasonably understood as such. In fact, the FCRA allows CRAs to report certain

negative information for up to seven years. *See* 15 U.S.C. § 1681c(a)(2)-(5)). Additionally, the decisions from other districts upon which Defendant relies are persuasive and show that Plaintiffs have failed to state a claim under the FCRA. *See Gibbs*, 2021 WL 5033484, at *4 (finding that a furnisher did not violate the FCRA by failing to update its report to note that a Chapter 13 bankruptcy was filed after the account was transferred to another party); *Terhune*, 2018 WL 6249982, at *2 ("[T]he Defendant is not currently reporting inaccurate information, and the Plaintiff has failed to articulate why the Defendant should amend a report that was accurate at the time it was issued.").[8]

Plaintiffs argue that—even if accurate—their credit report was misleading because it continued to state that Plaintiffs were in bankruptcy, that their account rating was "derogatory," and that their payment status was in a "wage earner plan." (Opp'n Br. at 8–9.) It is generally understood that even if the information in a credit report "is technically correct, it may nonetheless be inaccurate if, through omission, it creates a materially misleading impression." *Bibbs*, 43 F.4th at 343 (quoting *Seamans*, 744 F.3d at 865). To determine whether information is misleading, courts apply "the reasonable reader standard." *Id.* When using this standard, courts should read the report in its entirety, not in isolation. *Id.* at 344, 345 ("The reasonable reader standard is an objective standard, reading the report in its entirety, not a subjective one.").

Here, a reasonable reader would not find the reports to be misleading. A reasonable reader, when considering the reports in their entirety, would understand that Plaintiffs' credit report listing (1) their creditor remarks as in "Chapter 13" bankruptcy, and (2) their account rating as

---

[8] The Court need not discuss Plaintiffs' reliance on *Friedman v. CitiMortgage, Inc.*, Civ. No. 18-11173, 2019 WL 4194350 (S.D.N.Y. Sept. 3, 2019), because it is contrary to the Third Circuit's holding in *Bibbs*. Nevertheless, *Friedman* is also distinguishable because there, the consumer plausibly alleged that the reported information could cause "lenders [to] believe plaintiff is currently delinquent, negatively affecting potential lenders' perception of plaintiff's creditworthiness." No such allegation is made, nor can it be, in this case.

"derogatory," was historical information pertaining to a closed account.  *See White*, 2024 WL 5360095, at *5.  Moreover, Flagstar's reporting was not misleading or inaccurate because at the time it serviced Plaintiffs' mortgages—from June 11, 2021 to August 19, 2022—the information was accurate, and a reasonable reader could discover that Flagstar transferred Plaintiffs' mortgage account to another lender.  Accordingly, because the Court finds that Defendant has met its obligations under the FCRA, and because Plaintiffs have not plausibly alleged that Flagstar made an inaccurate statement—nor could they, Plaintiffs cannot state a claim under Section 1681s-2(b).

### B.    Whether Flagstar Was Required to Conduct a Reasonable Investigation

Because the Court finds that the disputed information is neither inaccurate nor misleading, the Court need not address whether Defendant failed to conduct a reasonable investigation.  *See Shechter v. Experian Info. Sols., Inc.*, Civ. No. 20-5552, 2021 WL 323302, at *3 (D.N.J. Jan. 31, 2021) (noting that a showing of inaccuracy is essential to a Section 1681s-2(b) claim).

### V.    CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendant's Motion.  The Court will dismiss Count Nine with prejudice given that any amendment to the Complaint would be futile. *See Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984); *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983) (noting that the court may refuse to allow an amendment that fails to state a cause of action).  An appropriate Order will follow.


Date: February 26, 2025

                                            s/ Zahid N. Quraishi
                                            **ZAHID N. QURAISHI**
                                            **UNITED STATES DISTRICT JUDGE**